**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ISELA CARMINE,<br>on behalf of herself and all others<br>similarly situated, | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | Case No. 20-cv-4589 |
| vs. | ) <br> ) | |
| MACY'S RETAIL HOLDINGS, INC., | ) <br> ) | <u>Jury Demanded</u> |
| Defendant. | ) | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Isela Carmine, on behalf of herself and a putative class ("Plaintiff" or "Carmine"),

brings this Class Action Complaint against Macy's Retail Holdings, Inc. ("Macy's") and alleges

the following:

### <u>Introduction</u>

1.       A New York Times article published on January 18, 2020 introduced Americans to the

then relatively unknown company Clearview AI, Inc ("Clearview"). The article described a

dystopian surveillance database, owned and operated by a private company and leased to the

highest bidder.

2.       On February 27, 2020, BuzzFeed News released an article based on a review of

Clearview's documents, revealing that Clearview is working or contracted with over 2,200 law

enforcement agencies, companies, and individuals around the world.

3.       The same article and subsequent reporting by several news outlets revealed that

Defendant Macy's, among other private businesses and government entities, was using

Clearview's surveillance database to aid in its operations.

4.    Macy's has run the identities of over six thousand individual customers through the database.

5.    Clearview AI's database includes the photographs, and personal and private data, including names, home addresses, and work addresses, of millions of Americans. Clearview acquired the billions of data points by "scraping" or harvesting the data from publicly available internet-based platforms such as Facebook, Instagram, and Twitter.

6.    Clearview's database is unique – it has run every one of the 3 billion photographs it has acquired through facial recognition software to extract and index the unique biometric data from each face. The database thus also contains the biometric identifiers and information of millions of Americans. Any private citizen can be identified by uploading a photo to the database. Once identified, the end-user – here Macy's – then has access to all of the individual's personal details that Clearview has also obtained.

7.    Macy's acquisition and use of consumer's biometric information and identifiers is illegal in Illinois.

8.    Macy's practice of identifying and tracking their customers using Clearview's illegal surveillance database is unfair and directly violates each customers' right to privacy.

## Parties

9.    Plaintiff Isela Carmine is a natural person and resident of this district. She maintains an active presence on social media, including Facebook and Instagram. She also uses Venmo to make and accept payments to other individuals. Carmine is a regular customer at Macy's.

10.    Defendant Macy's Retail Holdings, Inc. is a Delaware corporation, doing business in Illinois, with twenty-one department stores in the state.

**Jurisdiction**

11.     This Court has jurisdiction under 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act ("CAFA") because there are 100 or more members of the class, the parties and putative class members are minimally diverse and the aggregate amount in controversy is greater than $5,000,000.

12.     This Court has personal jurisdiction over Macy's because they conduct a substantial amount of business here which forms the basis of Plaintiff's claims. Macy's operates multiple stores in Illinois and is registered to do business in this state.

13.     Venue is proper here under 28 U.S.C. § 1391(b)(2) because a substantial amount of the acts and omissions giving rise to the claims occurred in Illinois.

**Macy's Surveillance and Clearview's Database**

14.     Clearview 'scrapes,' 'harvests,' or otherwise obtains information and photos of millions of Americans from the internet, in particular social media platforms like Facebook and Instagram. That is, they use automated software or processes to obtain massive amounts of data without the consent or knowledge of the platform users.

15.     Macy's stores are equipped with video surveillance that captures the images of its visitors and customers.

16.     Macy's sends or has sent pictures of persons who have visited its stores to Clearview, to identify the people in the pictures and obtain their personal information.

17.     Clearview then runs the photos through facial recognition software which identifies the photos that contain faces.

18.     The faces are then processed by Clearview's software, and their biometric data is extracted. The biometric data is a collection of vectors and/or other data points that allows faces to be classified, searched and indexed.

19.     Clearview's database links the biometric data to the other data Clearview has scraped so an end-user, like Macy's, can find out where the photos came from along with a significant amount of personal and private details about a given individual.

20.     In short, anyone with access to the database, including a reseller of the database or end-user, can upload a single photo and identify the person in real-time. A single picture on the internet means that any private citizen can immediately be identified and tracked.

21.     Clearview sells or leases access to the surveillance database to public and private entities, for profit. Clearview additionally contracts with third parties, like Macy's, to sell or lease access to the surveillance database.

22.     Macy's has a paid contract with Clearview.

23.     The pictures and images from video surveillance at Macy's are uploaded to Clearview's database. If there is a match, the results identifying individual shoppers based on their facial geometry are sent back to Macy's.

### The Illinois Biometric Information Privacy Act ("BIPA")

24.     More than ten years ago, the Illinois Legislature recognized the promises and perils of biometric identification technology. It passed the Biometric Information Privacy Act, 740 ILCS § 14/1 *et seq.*, to establish and safeguard Illinois' residents absolute right to control their biometric data.

25.     BIPA regulates both biometric identifiers and biometric information. *See, id.*

26.     Under the act, a "scan of…face geometry," is a biometric identifier. *Id.* at § 14/10.

27.    Biometric information is any information derived from a biometric identifier, regardless of how it is captured, stored, or shared. *Id.*

28.    The positive ID's that Macy's received back from Clearview are biometric information, as they are based on the biometric data Clearview has harvested and are used to identify individuals.

29.    Once the photo is positively identified based on the biometric information in Clearview's possession, the positive identification of those photos become biometric information.

30.    Under the act, a private entity, like Clearview or Macy's, in possession of either biometric identifiers or information must develop a written policy, available to the public, establishing a retention schedule and guidelines for permanently destroying the information or identifiers. *Id.* § 14/15(a).

31.    Defendant has not provided any policy whatsoever establishing either a retention schedule or guidelines for permanently destroying the biometric data.

32.    Under the act, a private entity like Macy's is prohibited from collecting, capturing, or otherwise obtaining a person's biometric information or identifier unless it first: a) informs the subject in writing that the information or identifier is being collected or stored; b) informs the subject in writing of the specific purpose and length of term for which the information or identifier is being collected, stored, or used;, and, c) receives a written release from the subject of the information or identifier. *Id.* at § 14/15(b).

33.    Macy's had not at any relevant time informed Plaintiff or any member of the Class (described below) any of the information required under § 14/15(b). Neither the Plaintiff nor members of the putative Class executed a written release to Macy's.

34.     Under the act, a private entity, like Macy's, in possession of a person's biometric identifier or information may not sell, lease, trade, or otherwise, profit from a person's information or identifier. *Id.* § 14/15(c).

35.     Macy's is actively profiting off of Plaintiff's and each member of the putative class' information or identifier through improved security and/or through marketing.

36.     Under the act, a private entity, like Macy's, in possession of a person's biometric identifier or information may not disclose or disseminate the information except in certain specific situations, such as to comply with a valid warrant or subpoena. *Id.* at § 14/15(d).

37.      Finally, under the act, a private entity, like Macy's, in possession of a person's biometric identifier or information must store, transmit, and protect the information from disclosure using a reasonable standard of care for their industry and in a manner that is the same or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information. *Id.* at § 14/15(e).

38.     BIPA provides a private right of action for violations of the act. For each individual violation, a person may recover the greater of actual damages or $1,000 for each negligent violation or $5,000 for each intentional or reckless violation. *Id.* at § 14/20. The act also provides for reasonable attorneys' fees, costs, and expenses and any other relief the court deems appropriate, including injunctive relief. *Id.*

39.     Macy's knew that to covertly collect personal and private data and biometric information would violate the privacy rights that BIPA was enacted to protect and that the violations would cause substantial harm to Illinois residents.

**The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA")**

40.     The ICFA proscribes any unfair or deceptive acts or practices in the course of trade or commerce. 815 ILCS § 505/2.

41.     The ICFA allows any consumer who suffers actual damages from a violation of the act to bring a private action to recover actual damages or any other relief the court deems proper, including punitive damages, as well as attorney's fees and costs. *Id.* at §§ 505/10a(a); 505/10a(c).

42.     Macy's does not provide notice that individual's entering their stores will be photographed or filmed and that their faces will be run through the illegal Clearview surveillance database.

43.     Macy's does not notify consumers that Macy's is acquiring their identity and personal information from the Clearview database.

44.     Macy's secret collection of photos and videos and positive identifications through Clearview's database occurred in the course of commerce or trade.

45.     Macy's secret identification of its shoppers based on their photographs is an unfair business practice.

46.     Macy's use of the illegal Clearview database without notice to consumers is an unfair business practice.

47.     Macy's intended for Illinois residents to be unaware of their covert data harvesting and surveillance operation, knowing that if they were aware, they would take steps to protect their personal and private data, including by not shopping at or entering any of Macy's stores.

48.     Once Plaintiff became aware of Macy's practices and/or Clearview's database, and the likelihood she was included in it, she was harmed by the invasion of her privacy, the anxiety and fear from being included in the surveillance database without her knowledge and consent, and by

having to pay for an attorney to file and litigate this suit to have her data removed from the database.

## Plaintiff's Allegations

49.     Plaintiff has been an Illinois resident, residing in the Northern District of Illinois.

50.     At relevant times, Plaintiff posted photos of herself on various publicly-accessible platforms and websites. Plaintiff posted the photos described in the preceding sentence while located in the Northern District of Illinois.

51.     At relevant times, others posted photos of Plaintiff on various publicly-accessible platforms and websites.

52.     At relevant times, photos of Plaintiff have appeared on various publicly-accessible websites.

53.     At no time did Defendant nor Clearview inform Plaintiff or a legally authorized representative of Plaintiff in writing that they had collected or obtained Plaintiff's biometric identifier or biometric information.

54.     At no time did Defendant nor Clearview inform Plaintiff or a legally authorized representative of Plaintiff in writing of the specific purpose and length of term for which Plaintiff's biometric identifier and/or biometric information was being collected, stored and used.

55.     At no time did Plaintiff or her legally authorized representative provide Defendant with an executed written release allowing them to collect, obtain, or use her biometric identifier and/or biometric information.

56.     At no time did Plaintiff or her legally authorized representative consent to Defendant disclosing or redisclosing her biometric identifiers and/or biometric information.

57.    Based on publicly-available information, Defendant Macy's obtained biometric information for over six thousand individual searches – including the biometric identifiers and information of Plaintiff and Class Members – and subsequently profited from that biometric information.

58.    Clearview, directly and through its agents, provided customers, such as Defendant Macy's, with a service agreement that ensured customers would have unlimited access to its database. Based on a service agreement, the agreement made no mention of privacy protections, constitutional safeguards or limitations on information sharing of any kind.

59.    In practice, Macy's could use the database to identify individual shoppers, whose pictures they have taken, via biometric searches and then share or use the results in its desired way. As a result, a single shopper's biometric search could potentially snowball into a nationwide dragnet.

60.    Moreover, any Macy's employee with access to the surveillance database could use it for their own personal ends -- for example, to stalk or track an individual.

61.    Carmine learned of the Clearview surveillance database and its use by Macy's.

62.    Because Carmine has such a widespread and active social media presence, on information and belief, Carmine's biometric information and identifiers and her personal and private information are contained in Clearview's database.

63.    Carmine was immediately concerned for her own privacy and safety and the privacy and safety of her friends and family.

64.    Plaintiff Carmine has experienced anxiety, stress and other emotional distress based on her inclusion in the surveillance database and the unauthorized, for-profit acquisition and use of her biometric information by Defendant Macy's.

65.     Carmine has suffered actual damages from the loss of control over her personal

property—her biometric identifiers and information—as a result of the Defendant's actions.

66.     Due to Defendant's actions, Carmine's unique biometric information, which BIPA was

designed to protect, has been compromised and sold for profit. It is unclear whether Carmine will

ever be able to regain control over her biometric information.

67.     Further, and as a result of all Defendant's actions, Carmine, and her family and friends,

are at a greater risk of stalking, harassment, and identity theft.

## Class Allegations

68.     Isela Carmine brings this action on behalf of herself and under Fed. R. Civ. P. 23, on

behalf of a class defined as:

All persons who reside or resided in Illinois whose biometric identifier or information is
or was contained in the Clearview database at any time and subsequently provided to
Macy's.

69.     Plaintiff reserves the right to amend or modify the Class definition as necessary following

discovery.

70.     On information and belief, the Class is so numerous that joinder is impracticable. While

the exact number is unknown, Plaintiff believes, based on reputable news sources, that

Defendant has run over 6,000 searches on individuals.

71.     Common questions of law and fact exist and predominate over individual questions and

include:

    a.      Whether any of the members consented to their inclusion in the surveillance

    database;

b.     Whether an individual's unique biometric identifiers and information, such as facial geometry, is intangible personal property or whether they have property right in such identifiers and information;

c.     The extent of any damages incurred by Class members as a result of Defendant's actions.

72.     Plaintiff's claims are also typical and co-extensive with the claims of the class because she and members of the Class have all suffered the same injuries as a result of identical conduct by the Defendant.

73.     Plaintiff will fairly and adequately protect the interests of the proposed Class and she has retained counsel with experience in consumer law, Illinois law, and federal class actions.

74.     A class action is superior to other methods of adjudication. The Class seeks injunctive relief applicable to the Class as a whole; due to the complexity of the claims, individual actions are not likely to be economically feasible; based on the possibility of a very large Class size, individual litigation would be a burden on the courts and result in delay and inconsistent results.

**<u>Relief Sought</u>**

**<u>COUNT I – DECLARATORY AND INJUNCTIVE RELIEF</u>**

75.     Plaintiff restates and alleges the above paragraphs, 1-80, as if set forth fully herein.

76.     Plaintiff and the Class seek a declaration:

a.     That the Macy's business practice of using surveillance camera photos to get a positive identification through Clearview's database are an ongoing violation of the Illinois Biometric Privacy Act;

77.     Plaintiff and the Class seek a court order:

a.      to command Macy's to expunge, delete, and/or remove all information associated in any way with any member of the Class from their database or any other data collection;

b.      to restrain Macy's from using its received positive identification from Clearview's scraping or harvesting any information related to any member of the class from any source at any time now or in the future;

c.      to command Macy's to submit to and pay for court-supervised monitoring by a third party of their database and data-collection procedures to ensure compliance with BIPA and any other order of the court;

## COUNT II – VIOLATION OF THE BIOMETRIC INFORMATION PRIVACY ACT

78.    Plaintiff restates and alleges the above paragraphs, 1-80, as if set forth fully herein.

79.    Defendant violated BIPA 740 ILCS § 14/15(a) by failing to develop and maintain a publicly available retention and destruction schedule.

80.    Defendant violated BIPA 740 ILCS § 14/15(b) by obtaining biometric information and identifiers without making the required disclosures and receiving a written release from each Class member.

81.    Defendant violated BIPA 740 ILCS § 14/15(c) by selling, leasing, trading, or otherwise profiting from the Plaintiff's and Class member's biometric information and identifiers.

82.    Defendant violated BIPA 740 ILCS § 14/15(d) by disclosing, re-disclosing, and otherwise disseminating Plaintiff's and Class members' biometric identifiers and information where the individuals did not consent to such disclosure and it was not: a) part of a financial transaction; b) required by any law; or, c) pursuant to a valid warrant or subpoena.

83.    As a direct result of these violations, Plaintiff and the Class suffered and continue to suffer injury and actual, economic, and emotional damages.

84.    Plaintiff and the Class seek:

    a.    $1,000 for the Plaintiff and each member of the class for each and every separate negligent violation;

    b.    $5,000 for the Plaintiff and each member of the class for each and every separate intentional or reckless violation;

    c.    punitive damages;

    d.    costs, expenses, and reasonable attorneys' fees;

    e.    and, any other relief this court deems proper.

## COUNT III – INVASION OF PRIVACY

85.    Plaintiff restates and alleges the above paragraphs, 1-80, as if set forth fully herein.

86.    Defendant did not have the right to Plaintiff's biometric information, and invaded the privacy of Plaintiff and other Macy's customers.

87.    As a result, Plaintiff suffered damages as a result of Defendant's misconduct.

88.    Plaintiff and the Class seek:

    a.    actual damages;

    b.    punitive damages;

    c.    costs, expenses, and reasonable attorneys' fees; and

    d.    any other relief the Court deems equitable and just.

## COUNT IV – ILLINOIS CONSUMER FRAUD AND UNFAIR BUSINESS PRACTICES ACT (ICFA) – UNFAIR ACT

89.    Plaintiff restates and alleges the above paragraphs, 1-80, as if set forth fully herein.

90.     At all times relevant, Defendant was engaged in trade or commerce in the state: Macy's has a paid contract with Clearview who leased, sold, or otherwise provided, for profit, access to the surveillance database based on pictures that Macy's provided.

91.     At all times relevant, Plaintiff and members of the class were consumers within the meaning of ICFA.

92.     Defendant's practice of using Clearview's unauthorized scraping or harvesting of Plaintiff's and the Class members' photos, videos, private and personal information, and its conversion into biometric information and identifiers to add to their surveillance database is an unfair practice.

93.     This practice has caused substantial injury and harm to Plaintiff and the members of the Class. It has also forced the Plaintiff to retain counsel to force Macy's to comply with BIPA and redress other violations of state law.

94.     Plaintiff and the Class seek:

    a.     actual damages;

    b.     punitive damages;

    c.     costs, expenses, and reasonable attorneys' fees; and

    d.     any other relief the Court deems equitable and just.

## COUNT V – ILLINOIS CONSUMER FRAUD AND UNFAIR BUSINESS PRACTICES ACT – DECEPTIVE ACT

95.     Plaintiff restates and alleges the above paragraphs, 1-80, as if set forth fully herein.

96.     At all times relevant, Defendant was engaged in trade or commerce in the state: Macy's has a paid contract with Clearview who leased, sold, or otherwise provided, for profit, access to the surveillance database based on pictures that Macy's provided.

97.    At all times relevant, Plaintiff and members of the class were consumers within the meaning of ICFA.

98.    Defendant's practice of using Clearview's unauthorized scraping or harvesting of Plaintiff's and the Class members' photos, videos, private and personal information, and its conversion into biometric information and identifiers to add to their surveillance database is a deceptive act.

99.    This practice has caused substantial injury and harm to Plaintiff and the members of the Class. It has also forced the Plaintiff to retain counsel to force Macy's to comply with BIPA and redress other violations of state law.

100.    Plaintiff and the Class seek:

      a.      actual damages;

      b.      punitive damages;

      c.      costs, expenses, and reasonable attorneys' fees; and

      d.      any other relief the Court deems equitable and just.

**Jury Demand**

Plaintiff demands a trial by jury.

August 5, 2020

[Signature Page Follows]

Submitted By:
/s/ Michael W. Drew

Michael Drew
Neighborhood Legal LLC
20 N. Clark Street #3300
Chicago, IL 60602
312-967-7220
mwd@neighborhood-legal.com


Michael Wood
Community Lawyers LLC
20 N. Clark Street, Suite 3100
Chicago, IL 60602
Tel (312) 757-1880
mwood@communitylawyersgroup.com

*Attorneys for Plaintiff*